E. N. Radford, Assignee of Pat Russo, d/b/a Russo and Company, Plaintiff, v. The Cosmopolitan National Bank of Chicago, a Corporation, et al., Defendants, Consolidated with City of Chicago, a Municipal Corporation, Plaintiff-Appellee, v. The Cosmopolitan National Bank of Chicago, as Trustee Under Trust No. 10180, Defendant, and Supreme Savings and Loan Association, a Corporation, E. N. Radford, and Mary Gales, Additional-Defendants.

On Appeal of Supreme Savings and Loan Association, a Corporation, Defendant and Counterplaintiff-Appellant.

Gen. No. 49,417.

First District, First Division.

August 31, 1964.

Philip S. Aimen, of Chicago, for appellant.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin and Marvin E. Aspen, Assistant Corporation Counsel, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

This is an appeal from a decree entered in the Superior Court on May 28, 1963, holding that the

241

demolition lien of the City of Chicago is superior to prior encumbrances on the subject premises including the prior existing mortgage lien of the appellant, Supreme Savings and Loan Association. On the theory that the determination of the validity of a statute was involved the Supreme Savings and Loan Association, counterplaintiff, appealed directly to the Supreme Court. The motion of the City of Chicago to transfer the cause to this court on the grounds that "no constitutional issue had been presented and passed upon by the trial court" was allowed and therefore we consider in this appeal only the construction and application of the involved sections of the Statute.

The sole question for us is whether the decree of the Superior Court confirming the Master's findings correctly held that the demolition encumbrance of the City of Chicago has priority over all prior existing encumbrances and liens.

Briefly, the pleadings reveal that on March 2, 1961, E. N. Radford, not a party to this appeal, filed a complaint in case No. 61S 4305, to foreclose a mechanic's lien against the involved premises located at 2638 West Homer Street, Chicago, Illinois. Supreme Savings and Loan Association filed its answer and countercomplaint to foreclose its first mortgage which was recorded on September 14, 1960.

On June 26, 1961, the City of Chicago commenced proceedings in case No. 61S 12073 for the demolition of the subject property, and amongst other things alleged that the building erected on said premises was, on January 3, 1961, substantially destroyed by fire. The Supreme Savings and Loan Association was not a party to this suit. On July 10, 1961, a decree was entered granting the City the right to demolish the building because it was unsafe and after the building was demolished on August 21, 1961, the City recorded its demolition lien on August 25, 1961.

242

On January 12, 1962, the Supreme Savings and Loan Association amended its counter complaint in case No. 61S 4305 naming the City as an additional party defendant alleging that its first mortgage was superior to the City's demolition lien. The City filed its answer and counterclaimed to foreclose its demolition lien, alleging also that its lien was superior to the prior recorded liens of the first mortgage and of the mechanic's lien. The two cases were then consolidated and the matter was referred to Master in Chancery Harry S. Stark to take evidence and to report his findings and conclusions. The Master found that the City's demolition lien should be given priority over all prior existing encumbrances and liens by virtue of what we shall later refer to as the 1961 Amendatory Act, Chap 24, Sec 23–70.2, as amended, of the Illinois Revised Statutes. The decree entered on May 28, 1963, approved and confirmed the Master's Report in all respects and the Supreme Savings and Loan Association, the owner of the first mortgage lien, appealed.

The first question to be resolved is, which one of a number of statutes governing lien priority is to be applied in the case at bar. In order to answer this question we must first decide what is the operative date at which priority is to be determined. From an examination of the record and the various dates of importance we find August 25, 1961, to be the date at which the parties' rights became fixed. It was at that date that the City recorded its demolition lien. It was only then, that any claim which the City had was finally determined and made a matter of record. Prior to that date, one of the other parties with an interest in the building could have had it demolished and thus made the City's actions unnecessary. After that date, the City's right to a demolition lien of a specified amount had matured. With August 25, 1961, in mind, we will set out a summary of the

243

statutory language here at issue. (All references are to c 24, Ill Rev Stats.)

## ORIGINAL ACT

August 15, 1941: Section 23–70.2 was enacted, providing that, "the cost of such demolition . . . shall be a lien . . . *subordinate* to all prior and existing encumbrances . . ." (emphasis added).

## REPEALER

July 1, 1961: Legislature enacted the "repealer" Section 1–9–8 which repealed along with other sections, Section 23–70.2.

## VERBATIM REENACTMENT

July 1, 1961: Legislature enacted Section 11–31–1 of the new Illinois Municipal Code which copied verbatim the words of the repealed Section 23–70.2.

There was, however, another piece of legislation which went into effect on July 1, 1961, which provided as follows:

## INTERPRETATION SECTION

July 1, 1961: Section 1–9–9, the section by which we are to construe the repealer provisions of Section 1–9–8, was enacted. It provides that:

Nothing in this Code shall be construed to repeal any section of the various laws of which this Code is comprised when such section is the subject of an amendment enacted by the Seventy-Second General Assembly and

244

which becomes law. Furthermore, it is the intent of the General Assembly that the corresponding section of this Code shall be construed with such amended section so as to give effect to such amendment as if it were made a part of this Code.

The situation of which Section 1–9–9 speaks did indeed take place when on:

## AMENDATORY ACT

August 1, 1961: By the action of the Seventy-Second General Assembly, Section 23–70.2 was amended. The section as amended reads: "the cost of such demolition . . . shall be a lien . . . *superior* to all prior existing liens and encumbrances . . ." (emphasis added). The Legislature, however, failed to amend Section 11–31–1 at the same time it amended paragraph 23–70.2.

It can be seen that as of August 25, 1961, amended Section 23–70.2 had already taken effect. There is, however, little question that the conflict between Section 23–70.2, as amended, calling for a superior lien and Section 11–31–1, calling for a subordinate lien, leaves the law in a rather confused state. In the presence of such a situation the task of this Court is to determine whether the confusion can be resolved and the legislative intent ascertained and carried out.
 The primary question in all cases of statutory construction is the intent of the legislature. In People ex rel. Dickey v. Southern Ry. Co., 17 Ill2d 550, 162 NE2d 417, the Supreme Court on page 554 said:

When confronted with problems arising when two or more bills are passed at the same session

245

of the legislature, each pertaining to the same subject or amending the same statute, the primary question, as in all cases of statutory constructions, is the intent of the legislature, rather than the technical priority of the passage of the acts. (S. Buchsbaum & Co. v. Gordon, 389 Ill 493). The whole record of the legislature, including acts passed at subsequent sessions, is open to ascertain such intent and, once ascertained, it will be given effect irrespective of priority of enactment.

The appellant insists that inasmuch as Section 11–31–1 of the 1961 Code is an exact reenactment of the old Section 23–70.2 of the 1941 Act it repealed the old Section 23–70.2 and therefore the Amendatory Act of August 1, 1961, attempted to amend an Act that was already repealed and consequently void. Counsel for appellant argues that it was "not some mistake or oversight on the part of the 1961 Legislature when they repealed Section 23–70.2 of the '1941 Act' by the repealer provision and Section 11–31–1."

■ Looking at the record of the 1961 Legislature we find we cannot agree with the appellant's theory. We have concluded that the failure to amend Section 11–31–1 was made through inadvertence and that there is ample evidence that on August 1, 1961, the legislature intended that the provisions contained in the Amendatory Act should be the law of this State. It is our conclusion that the purported repeal of Section 23–70.2 must be read along with the saving provisions of the Interpretation Section 1–9–9. The Legislature while wishing to repeal numerous old laws in response to its enactment of the new Municipal Code yet desired to make provision for amendatory inclusions of certain old sections to be made at a later date. The Legislature's amendment of Section 23–70.2 carried out this stated intention. We do not feel

246

that the Legislature's failure to amend Section 11–31–1 to conform to this subsequent change is sufficient to cast doubt upon the otherwise consistent actions of the Legislature.

We note that the compilers of the Illinois Revised Statutes made the following comment after Section 11–31–1. "This section should be construed with Section 23–70.2 of this chapter, the effect given to the 1961 amendment thereof. See Section 1–9–9 of this chapter." Ill Rev Stats 1961, Vol 1, p 856. Similarly, Section 23–70.2 was annotated as follows: "This section, by virtue of the 1961 amendment thereof, is saved from repeal by the Municipal Code of 1961. See Sections 1–9–9 and 11–31–1 of this chapter." Ill Rev Stats 1961, Vol 1, p 964. Further evidence of the Legislature's intent may be gained from a consideration of acts passed at subsequent sessions. Lubezny v. Ball, 389 Ill 263, 59 NE2d 645. Thus it can be shown that the 1963 Legislature carried out its previously stated legislative intent. The difference being that unlike the actions of the 1961 Legislature, its intent was made manifestly clear. The "63" Legislature cured the oversight of its 1961 predecessor by amending the pertinent portion of Section 11–31–1 to read as follows: "The cost of such demolition . . . shall be a lien . . . *superior* to all prior existing liens and encumbrances . . ." (emphasis added). Ill Rev Stats 1963, Ch 24, Sec 11–31–1. The Legislature also removed the duplicity of statutes by laying Section 23–70.2, as amended, to its final rest.

Appellant next contends that its right to a priority of its lien was vested prior to the enactment of the "1961 Amendatory Act" and therefore the Act cannot be given a retrospective effect so as to grant the City a prior lien. The law is well established that a statute will not be given a retrospective effect unless the intent of the legislature to do so is plain. The intention of the Legislature may be de-

247

termined in various ways. In this State, for example, we are allowed to examine the preamble to, as well as the text of, an act in an attempt to discover the motivation behind the legislation. The preamble to the amended Section 23–70.2 is especially instructive. It speaks of the difficulties encountered under the prior law and sketches the immediate improvement hoped to be effectuated by this amendment. The preamble reads:

A Bill.

For an Act to amend Section 23–70.2 of the "Revised Cities and Villages Act," approved August 15, 1941, as amended.

---

Whereas, In many instances in which the City of Chicago obtains a decree for demolition, the building which is the subject of the demolition suit is an abandoned building, frequently abandoned for many years; and

Whereas, The property involved in such litigation is usually encumbered by real estate taxes, mortgages, or mechanics' or other liens which, under present law, are superior to the lien for demolition costs necessarily incurred by the City of Chicago; and

Whereas, The City of Chicago, having incurred the demolition costs incident to the litigation, finds it impossible to recover such costs unless its lien therefor is given priority; therefore,

We feel that the language of the Act itself carries out the intention for immediate change which is shown by the tone of the preamble. The Legislature was explicit and clear in its meaning when it provided that "the demolition lien shall be superior *to all prior existing* liens and encumbrances . . ." (emphasis

added). If our interpretation of the phrase used by the Legislature needs additional support we would cite the case of City of Chicago v. Elmhurst Nat. Bank, 35 Ill App2d 383, 386, 183 NE2d 171. There the Court held that the term "existing buildings" as used in the municipal ordinance referred to pre-ordinance buildings. Similarly, "prior existing encumbrances" as used in the instant statute refers to encumbrances existing at the time of the passage of the Act. To hold otherwise would be to say that the Legislature intended the full force of the Act to be postponed for many years. There is no evidence to support this interpretation.

■ The appellant also takes the position that the decree entered in case No. 61S 12073 on July 10, 1961, adjudicated and determined the City's right to a demolition lien as arising solely under the "1941 Act." Under that Act, it will be remembered, the lien of the City would be junior and subordinate to prior existing liens. Therefore it is argued that the decree entered on May 28, 1963, in the consolidated case No. 61S 4305, declaring the City's lien to be superior is void under the doctrine of estoppel by verdict.

> For the doctrine of estoppel by verdict to operate there must not only have been a finding of a specific fact in the former judgment material and controlling in both cases, but to act as a bar, it must have been so in issue that it was necessarily determined by the court rendering that judgment. Pipitone v. Mandala, 33 Ill App2d 461, 465. Also see 18 ILP Estoppel, Sec 3, p 65.

■ With these principles as to estoppel by verdict in mind, we have examined the record. It is clear that the issue of priority of the instant lien was presented first on January 12, 1962, when the appellant filed an amended counter complaint in case No. 61S 4305, naming the City as an additional party and

alleging that its mortgage was superior to that of the City's demolition lien. On February 9, 1962, the City filed its answer denying that its demolition lien was subordinate to any prior existing lien and it was upon this issue that the matter was referred to the Master in Chancery. The decree of July 10, 1961, upon which appellant relies, was determinative only as to the City's right to a lien and did not in any way adjudicate the issue of the priority of liens as between the subject parties. It naturally follows that we cannot invoke the doctrine of estoppel by verdict.

For the reasons stated the decree entered on May 28, 1963, in case No. 61S 4305 is affirmed.

Affirmed.

MURPHY, P. J. and KLUCZYNSKI, J., concur.