THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES CROSS, Defendant-Appellant.

First District (4th Division)   No. 79-376

Opinion filed May 15, 1980.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, *State's Attorney*, of Chicago (Marcia B. Orr, Joan S. Cherry, and Adrienne Noble Nacev, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Following a bench trial, defendant, Charles Cross, was convicted of attempted murder, attempted armed robbery and aggravated battery causing great bodily harm. (Ill. Rev. Stat. 1975, ch. 38, pars. 8—4 and 12—4.) Defendant received concurrent sentences of 4 to 6 years for attempted murder and 2 to 6 years for each of the other offenses. On appeal defendant contends that the trial court's misinformation concerning the applicability of present law to his case foreclosed him from making a proper election as to the law under which to be sentenced[1] and that multiple convictions and sentences for attempted murder and aggravated battery were improper.

The evidence of defendant's culpability is not challenged, and it will be unnecessary to recite in detail the facts involved in the incident. It is sufficient to note that the 59-year-old victim testified that he admitted a young woman to his apartment late in the evening on the date of the occurrence. The victim did not lock the apartment door after her entry. A short time later defendant and another man entered. Defendant carried a lead pipe, and his accomplice had a gun. The victim knelt on the floor as he had been ordered by the gunman and defendant demanded money. The victim told them that his money was in his pants pocket, but defendant could not find any money after searching 3 pairs of trousers. Defendant then threw one pair of pants at the victim, ordered him to get the money and hit the victim on the head with the pipe. When one of the assailants then suggested that they kill the victim, he threw the pants at the gunman, who fired 4 shots hitting the victim twice. The assailants then fled with the woman. Defendant was arrested the following day and confessed to the crimes.

At the sentencing hearing the court asked defendant if his counsel had discussed the differences between the prior law and the Unified Code of Corrections as then in effect. Defendant responded affirmatively. The court then generally compared possible sentences under each statutory scheme. The court also specifically remarked that under current law if

---

[1] The crimes occurred on May 5, 1975. Defendant was convicted in mid-1978. The Unified Code of Corrections, as amended, became effective on February 1, 1978, and established determinate sentences for criminal offenses. A defendant sentenced after the effective date of the amendment for an offense occurring prior thereto could elect to be sentenced under the amended statute. Ill. Rev. Stat., 1977 Supp., ch. 38, par. 1008—2—4(b).

one of the offenses for which defendant was convicted was a Class X felony and serious bodily harm was inflicted upon the victim, then consecutive sentences could be imposed upon multiple convictions. (Ill. Rev. Stat., 1977 Supp., ch. 38, par. 1005—8—4(a).) Defense counsel replied that defendant had not been advised of this latter possibility because under counsel's interpretation the aforesaid statute would not apply.

Defendant then unwaveringly elected to be sentenced under the law in effect at the time the offenses were committed. He received the enumerated indeterminate sentences.

Defendant initially questions whether he may knowingly and intelligently waive his right to elect to be sentenced under the existing statute when his waiver is based on the misinformation provided to him by the trial judge which could have materially affected his choice. Defendant bases his position on the trial court's claimed misconstruction of section 5—8—4(a) of the Unified Code of Corrections, as amended, permitting imposition of consecutive sentences in certain situations. That statute provides in relevant part:

> "* * * The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, in which event the court may enter sentences to run consecutively." Ill. Rev. Stat., 1977 Supp., ch. 38, par. 1005—8—4(a).

Defendant maintains that neither attempt murder nor attempt armed robbery were strictly classified as Class X or Class 1 felonies, although a sentence for attempt murder "shall not exceed the sentence for a Class X felony" and a sentence for attempt armed robbery "shall not exceed the sentence for a Class 1 felony." (Ill. Rev. Stat., 1977 Supp., ch. 38, pars. 8—4(c)(1), 8—4(c)(2), and 18—2(b).) Thus, defendant asserts that he was forced to elect under which law to be sentenced while laboring under the court's misapprehension of the availability of consecutive sentences under present law. Defendant now requests that a new sentencing hearing be conducted so that he might make a proper election.

The State argues that the inchoate crime of attempt should be treated exactly as the sentence applicable to the specified class of crimes which set the limits for the principal offense. The State relies on the recent enactment of Public Act 81-923, effective January 1, 1980, which requires attempt murder to be treated as a Class X felony and attempt armed robbery as a Class 1 felony.

■■ ■ We reject the State's position. In *People v. Moore* (1978), 69 Ill.

2d 520, 372 N.E.2d 666, our supreme court authoritatively construed section 8—4 of the Criminal Code, authorizing that a sentence for attempt murder "shall not exceed the sentence for a Class 1 felony." The court concluded that the statutory language was not ambiguous and the literal meaning of the attempt statute should be given effect for sentencing purposes. The supreme court held that the statute in question was only intended to set a maximum sentence. Since the supreme court in *Moore* found no ambiguity in the attempt statute now at issue, resort to subsequent legislation as an aid to statutory construction is not proper. (Compare *People v. Scott* (1974), 57 Ill. 2d 353, 358, 312 N.E.2d 596, and *Lubezny v. Ball* (1945), 389 Ill. 263, 266, 59 N.E.2d 645.) We therefore conclude that the trial court incorrectly equated the classifications of attempt murder and attempt armed robbery as a Class X or Class 1 felony in advising defendant of the possibility of consecutive sentences in the present case.

We must consider, however, whether such error requires a remand to allow defendant to again elect under which law he should be sentenced. The responsibility for advising defendant concerning alternative sentencing dispositions from which he may elect is placed primarily upon defense counsel. (*People v. Rich* (1979), 77 Ill. App. 3d 902, 903, 396 N.E.2d 824.) Here, the record shows that defense counsel had fulfilled that responsibility. Further, it has been held that there need be no showing that defendant's election of which statute to be sentenced under was knowing and intelligent, and the trial court's mistaken explanation in regard to the differing sentences, which might be imposed, is not necessarily reversible error. See *People v. Daily* (1979), 79 Ill. App. 3d 928, 940-41, 398 N.E.2d 923.

In *People v. Blackwell* (1980), 80 Ill. App. 3d 302, 399 N.E.2d 696,[2] the defendant, who consulted with counsel, unhesitatingly elected to be sentenced under existing rather than prior law after the trial court mistakenly advised defendant of the mandatory parole term under prior law. The appellate court refused to set aside defendant's election because defendant was not confused nor hesitant in making the election, and the misstatement did not involve the law under which defendant elected to be sentenced. Here, a comparable situation exists. Defendant was advised by counsel of the sentence election. The court misapprehended the possible consequences under one statutory scheme; and defendant, knowing of this possible mistake as established by the colloquy of defense counsel and the court in regard thereto, elected to be sentenced under another statutory scheme. The record shows that defendant was

---

[2] A petition for leave to appeal has been filed with the Supreme Court in *People v. Blackwell*, No. 53180.

adequately represented by counsel, understood the consequences of this election and unhesitatingly made the election. We find no reversible error in defendant's election.

Finally, defendant contends that his conviction for aggravated battery and sentence imposed thereon are improper because that crime is a lesser included offense of attempt murder. Thus he argues the judgment for aggravated battery should not have been entered under *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, because his convictions were based on the firing of a series of shots at the victim. Defendant also asserts that the conviction for aggravated battery could not have been based on his striking the victim on the head with a lead pipe because there was no showing the victim suffered great bodily harm from that act as charged in the count of the indictment upon which he was convicted. (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(a).) The State, however, responds that defendant's attempted murder conviction may be sustained by the accomplice's shooting of the victim under the theory of accountability, and his aggravated battery conviction stemmed from his striking the victim with the pipe.

We agree with the State's interpretation regarding the aggravated battery conviction. Our position is supported by the trial court's action in not entering the judgment on defendant's convictions for three other charges of aggravated battery. One of these remaining charges was specifically associated with the attempt murder conviction by the trial court. This clearly suggests that the court considered the aggravated battery upon which defendant was sentenced to be a separate act from the attempt murder.

The question of whether one suffers great bodily harm as a result of a battery is a factual matter for the trier of fact. (*People v. Brown* (1974), 18 Ill. App. 3d 1049, 1054, 310 N.E.2d 498; *People v. Hayes* (1973), 15 Ill. App. 3d 851, 860, 305 N.E.2d 283.) Certainly, striking the victim on the head with a lead pipe may be properly construed as inflicting great bodily harm.

We also reject defendant's contention questioning the correctness of multiple convictions. In *People v. King* our supreme court stated:

"Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will

support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." 66 Ill. 2d 551, 566.

■■ Aggravated battery is a lesser included offense of attempt murder. (*People v. Brock* (1978), 64 Ill. App. 3d 64, 68, 380 N.E.2d 1102.) However, in this case defendant struck the victim after no money could be found. When the victim then tried to resist because he feared that he would be killed due to the unsuccessful armed robbery, the accomplice shot him. Thus defendant stands convicted not only of his own act but the clearly divisible act of his accomplice, which occurred after an interval from defendant's striking the victim. We believe this situation allows for multiple convictions and for imposition of separate sentences thereon. Further, we believe that there was a sufficient interval of time between the acts to allow for separate convictions even though a single victim was involved. See discussion in *People v. Hawk* (1980), 80 Ill. App. 3d 827, 829, 400 N.E.2d 499; *People v. Childs* (1978), 62 Ill. App. 3d 924, 926, 379 N.E.2d 721.

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

LINN, P. J., and JOHNSON, J., concur.